May it please the court, I'm Thomas Hester on behalf of petitioner Danny Harrington. There are two distinguishing features of this case. The first being that the underlying trial was an extremely close case. There was no physical evidence. There were no witnesses to the alleged abuse. There were no admissions. It was truly Nathan Harrington's word against his father, Danny Harrington's. The second is really one. Did I read that the vote was ten to two? That's correct. They don't need a unanimous in Oregon in a felony case. A ten to do verdict is permissible. Beyond that, it would be a jury. The other interesting feature is that the post conviction judge in this case at the trial level was Oregon's retired chief justice, Edwin Peterson. And as he noted, if the jury believed Nathan, it would convict. And if it did, if it believed the petitioner, it would not. As you just noted, Judge Reinhart, the jury convicted by a ten to two margin after hearing from six different witnesses. Good deal of detail about Mr. Harrington's prior pleas to sexually abusing two of Nathan's former girlfriends. As Justice Peterson found in this sex abuse case, a competent defense attorney would have attempted to limit the admissibility of the prior convictions if offered by the prosecution for the fact of conviction. And that is what a competent trial judge would have admitted. When you say fact of conviction, as I understand the brief, both sides seem to agree with what the court of appeals said. It's not only that he was convicted of a felony that the jury would hear, but he was convicted of the particular felony of sexual abuse in the first degree or whatever it is. That's correct. Yes, I believe it would be told how many convictions there were. Well, presumably, I think in this case, if you would look to the record or at the record, at least page 416, Justice Peterson specifically inquired of the state of the attorneys in the post conviction case. What could be proven? It wasn't a very satisfactory answer there. But as I gather now, I mean, what the court of appeals said was what I think I just described to you. And I think that's what the briefs seem to agree would be proper to tell the jury that he was convicted of six counts of sex abuse. What was a single case? I agree. So what how do you think the best way is to defend that case? If you have a witness who's going to be the sole defense, basically, I didn't do it. And, you know, the jury is accused of molesting his son. And, you know, the jury is going to be told he was convicted of six counts of sexual abuse in the first degree. What would you do about that? I think that the critical lapse in what Justice Peterson recognized was in eliciting that those prior convictions were for sexually abusing children. Well, it was sexually abusing young teenage girls as opposed to a five or six year old son. Is that not really better than having a jury think maybe those other counts had to do with abusing other young boys? Maybe the brother, maybe other young boys, maybe this boy. If I think it's the only way that you can get to that being better is if you make the assumption that the Oregon Court of Appeals made in reversing Justice Peterson, that the jury will not follow the law as instructed, that they will. Well, if the jury is going to follow the law as instructed, you think they're only going to say, gee, this only has to do with his credibility. And I'm not going to pay any attention to the fact that he was convicted. Do you really believe that that's what a jury does? I believe that it's fundamental to the constitutionality of Oregon's scheme and its Rule 609 that that be the case. The reason criminal defendants don't testify, as you probably know far better than I do, is because they don't want the jury to know about their records. Quite so. And in this case, I think everyone along the way has agreed Mr. Harrington had to testify. And so the question was how you confront this difficult evidence. How do you contain the damage of the fact that they're going to be told he's got six counts of sexual abuse and you don't know what kind of victims he had before? And what the expert who submitted an affidavit on behalf of Mr. Harrington in the post-conviction court and Justice Peterson, who the State actually sort of approached as an expert in this area, not needing additional expertise, ruled or found was that you keep it to a bare minimum. Only the fact of the conviction, the title of the charge, nothing else. You don't have six witnesses testify to the details, to the fact that there were children, to the fact that they were friends of the sons. But one of the things that the defense counsel tried to do was to emphasize that these were girls, not boys, that they were more mature and not young children, that Mr. Harrington had freely admitted and confessed to the crimes of the girls when confronted with that. And therefore, these were just fundamentally different kinds of accusations. And therefore, the fact of a molestation of girls shouldn't have any impact on the question as to whether he had molested his son as a very, very young child. It's after failing to obtain sort of a pre-trial ruling on how this should have been limited on seeking that. But the problem is he didn't want it limited. That was the judgment, I think we have to all assume, that he didn't want it limited. He thought that that would do more damage than what Judge Bybee just suggested, explaining this was that these are not other little boys. They're not his other relatives. They're not children. They're developing 12 and 13-year-old girls, which is not the same as molesting a five-year-old son. There is a distinction. I mean, the son was actually eight at the time of the alleged conduct. Isn't the question whether this was a reasonable strategy? I mean, there were other strategies, but why isn't this one reasonable? And I think probably the easiest way for me to address that is to give another hypothetical. If I were trying an armed bank robbery case and I'd succeeded in suppressing the gun in a pre-trial motion because of a bad stop, and then in the course of trial I, through some blunder, opened the door to the gun coming in, the fact that I subsequently did a very effective job, perhaps, of pointing out inconsistencies in the television description of the robbery case. This wasn't the difference between your hypothesis. It wasn't out of blunder. This is what he decided to do. And for the reasons, actually, that Judge Reinhart and Judge Bybee are saying, that he thought it was better to explain what the situation was completely rather than leave the jury to speculate, because he was stuck with six sexual abuses. Well, I disagree that this was not a blunder. I believe this absolutely was a blunder. It may be that it was a blunder that he made volitionally as opposed to accidentally. Well, it was a decision that it was better to explain the differences than to let the jury speculate. That's what the Oregon Court of Appeals says. I think it's notable, if you look at the record at page 428, Justice Peterson's findings, he stresses there was no evidence that there was a tactical decision. The lawyer was not called in the post-conviction case. No affidavit was submitted from that lawyer. Well, the State did obtain an affidavit from the appellate lawyer as to those claims. So there is not actually evidence of that in the record. It is an inference. It's a pretty good inference, isn't it? Well, it's the case that counsel tried to use the evidence in some fashion of trial, yes. But this isn't a blunder in the sense of your analogy where you inadvertently said something. This is a very conscious step-by-step. Paul, the witness, has explained it away and drive right through it instead of pretending that the elephant isn't in the room. And he gets two votes for it. Certainly he begins. I mean, clearly he begins that way. His opening statement starts out ostensibly by telling the jury about this. So, yes, it is volitional. Isn't that in itself an indication that that was his strategy? Otherwise, he wouldn't have said it in his opening statement. It was a strategic choice. It was, I suppose, a strategic choice. It was one that no competent attorney would have made in this type of sex case. You have two different possibilities. One, if the lawyer had come in, submitted an affidavit and said, you know, at the time of making a motion, I just screwed up. I didn't make the motion. And then I was stuck. And I did all of these things. You might have a good case. But I noticed also you mentioned neither side introduced an affidavit, a statement or called the lawyer. So we're stuck with what can you infer and what's reasonable to infer. The lawyer neither said I did it deliberately or I made a mistake. What reason is there to think that he first made a mistake and then came up with this strategy or tactic? I think it's sensibly it's immaterial whether the lawyer thought this was an effective strategy or a good strategy or it was somehow a mistake that he then stepped into. Well, if you think it's immaterial and that the only question is, is this an unreasonable strategy? You know, I must say this is not a final judgment. But after reading a lot of the record and thinking about this case, it's a terrible problem. We had a terrible case either way. I mean, but I can't think of a better strategy. I mean, not only do I think it's unreasonable initially, but I think it's probably the best you could do. Well, if I can conclude by trying to illustrate for you, I think how how badly it went afoul and how it really condemned Mr. Harrington to conviction as I know the effort to distinguish his reaction didn't work very well. Well, I was actually going to turn to the very end of the prosecutor's summation where she, speaking of this evidence, says the abuse that happened to him, to Nathan, has been confirmed because these other people, the two girls in the other case, are strong enough and brave enough and courageous enough to come forward. She is inviting, employing, relying upon the very forbidden inference that the instructions should have told the jury they could not draw and which made the admission of this type of evidence in this detail absolutely devastating in this case. I'd urge the court that there were. You're not making an argument of prosecutorial misconduct. I am not. No, it is a part and parcel of the effect or the prejudice from counsel's erroneous choice. You know, it's the underlying cases is troubling. The this attack on it. Maybe there are others left for another habeas petition someday. But if you've got a hard time, I think, selling the fact that this lawyer didn't make a reasonable decision, as Judge Huggs said, maybe not the best, or as I think, maybe the best. But to say that given several absolutely hopeless choices, not absolutely hopeless, but very unfortunate choices, there was nothing good he could do. To say this one was unreasonable is difficult to come to. If I can conclude by urging the court to review Justice Peterson's opinion, where he's quoting the expert opinion of the sex abuse lawyer from Oregon and concurring with that, I would urge the court that, indeed, in this case, it was an effective assistance of counsel and to register the issue. The district court should be reversed. Thank you. May it please the Court. Kay McDonald for Superintendent Johnson, appellee. In listening to the previous argument, I'm not sure that there is much that I can add to the points that this Court has already made. The words that were flowing through my mind and which I intended to say to this Court were no-win situation. The question really isn't what is the very best strategy, but was it a reasonable strategy? No-win situation means he really couldn't get a fair trial. Well, of course, the State disagrees that he didn't get a fair trial. There are consequences to having prior. How do you handle Justice Peterson's arguments?  With respect to counsel's previous comment about, gee, Justice Peterson relied on expert testimony, we would make the point that in the area of reasonable performance by an attorney, that's a question of law, not a question of fact. There isn't a community standard of care sort of analysis that goes on. The fact of the matter is the Court itself is the final arbiter of what is a reasonable thing for an attorney to do. And the highest state court in Oregon decided that this was a reasonable tactic to take. Justice Peterson was wrong on the facts. Do you maintain that there were no place then for testimony of an expert about what is reasonable or not? I suspect that it might. Pardon me. Sorry. I suspect that there is a place in which, for example, a very experienced defense attorney could say, I have tried 500 cases just like this one. It never works to do what counsel did in this case. And there's a better way, and this often works. I don't recall, and I don't think counsel's pointed out any testimonies. Well, I've tried numerous or three sex abuse cases, and this is the best way to handle it. Even so, such testimony is not really of great aid to the Court because the ultimate legal question is – It cannot be considered? Pardon me? It cannot be considered? I think the Court is able to consider any evidence at once. My only point is that that is not a factual question, and therefore on review by the Oregon Supreme Court, it can choose to consider it or not. Its job is to decide based on the facts before it, the facts found by the post-conviction court in this case, whether as a legal question – But you just were saying based on the facts. Yes. And I don't believe that an ultimate judgment about what's reasonable or unreasonable is a fact. It depends on what facts are produced, doesn't it? I'm sorry, Your Honor. It depends upon what facts are produced as to whether it was reasonable or not. And part of the fact would be the testimony of an expert. That's correct. And the remaining facts are those found in the trial record in this case. Right. And I think it's – it was appropriate for the Oregon Supreme Court to look at that – those facts, which, you know, are undisputed in this case, they're not challenged, and to determine regardless of what one attorney might think is the best way to handle it, that's only one reasonable interpretation or one reasonable tactical decision. That's not really what's the question before us today. The question is, would any reasonable – the initial question – would any reasonable attorney choose to take the tactical path that this attorney did? And the Oregon Court of Appeals, I think, correctly righted Justice Peterson's view that no reasonable attorney could possibly in this situation take that tack. And I don't think we have to dispute really – What did he base that on? Pardon me? What did he base that on? Oh, the trial counsel? What did trial counsel – Peterson. Justice Peterson. He based it partially on the belief that all that would come in was the fact of two convictions. He wasn't sure whether the additional fact that these – that there were six convictions for sex abuse would come in. I would suggest that makes a huge difference. It places defense counsel in an entirely different position. Defense counsel then is faced with a situation in which, what do you do? How do you approach this? And that was the State's fault, was it not, that Justice Peterson wasn't advised to the law properly? I don't recall anything in the record that would suggest it was the State's fault. Well, he asked the parties what the law was. And I thought that his reply was based on their replies. Maybe the State gave him accurate information and he disregarded it. I'm not sure, Your Honor. I'm sorry. I do know that that is an argument that he could have presented to the higher court and said this wasn't properly preserved, you misled Justice Peterson. Either he did not do that in his appeal or the Court of Appeals rejected it. It's not as though, you know, the highest – or he presented that issue to the court later. I would agree that this was a close case. And I would agree that there are times when defense counsel is stuck. But the only claim here – And it's very hard to get a fair trial. I think that he did exactly the – I'm sorry, he, the defense counsel, did exactly the right thing. That may be. And it just may have been impossible to get a fair trial under these circumstances. Well, I – In a close case. It is a close case. When you tell a jury that he molested – this is somebody who molested young children or not young children, molested children. How is he ever going to get a fair trial in a close case? You get a fair trial by insisting on proper jury instructions which were given. Which you know they're not going to follow. Well, you don't – I beg to differ, Your Honor. You don't know – Well, a prosecutor wouldn't have said just what defense counsel quoted if anybody thought that a jury is going to disregard the fact that he'd previously been convicted of abusing children. Well, the jury was instructed that it could only – I'm not suggesting there's anything to do about it. It's certainly not at this stage. It's not before us, but it's somewhat frustrating sometimes. There's a man in jail for 30 years who may or may not be guilty and had a trial where he really didn't have a chance. I have two responses, if I may. One is I do want to point out as a factual matter that although it was a close case, it's not precisely true that defendant did – made no admissions in this case. According to the victim's mother, he admitted to that. Well, the victim's mother was somebody who had a record herself who had sent the husband's replacement to jail also for some reason. I understand. I don't know what it was, but not a lady that you'd want to get tangled up with. I understand, Your Honor. The other point that I would like to make is that it may be an unfortunate aspect of our criminal system that if you're going to testify, you're going to have your prior convictions brought out. That's, I guess, one of the unfortunate collateral consequences of having prior convictions, particularly for sex abuse. Well, it's something that we keep – pretend in the law that we don't believe in, that we pretend that bad acts should not be considered, that you don't convict somebody based on his past conduct, and we go through all these wonderful fictions and theories, and then we go ahead and convict him on that basis. Well, I guess that's one way of reading this record. On the other hand, the only issue here I would just remind the court is did this attorney do the right thing? There was no challenge at any point to the way that our criminal system is set up, and I guess it's just not part of this case, even though in some circumstances. Well, sometimes it serves a purpose to people to vent their frustrations, even judges. The other very quick point that I would make, Your Honor, is that defendant – sorry, not defendant, but counsel has to overcome two burdens here. The first is to show that this is not a reasonable thing that any reasonable attorney would do. The second, though, is to show that the court of appeals misapplied Strickland in a completely crazy manner, and I would just submit that. Well, it's not quite that bad. It has to be unreasonable. It doesn't have to be crazy. I overstated my point. It's a fairly high standard designed to make it difficult to overcome. Exactly. Unless the court has further questions, I have nothing more. Thank you, counsel. If there's nothing further. If I could just have 30 seconds. Certainly. I would just like to note, I believe that the Supreme Court's decision in Wiggins in the 2003 term points to the need to sort of look to the standard in the profession, and particularly adopts the ABA standards. So I think that that makes or speaks to the issue of the appropriateness of the expert testimony being considered by the post-conviction trial court. The other point I would make is that in Justice Peterson's findings, where he does indicate he's uncertain as to whether or not the actual title of the conviction would also come in, he specifically states that it would make no difference to his determination. I raise those points for the court. Thank you very much, counsel. Case just argued will be submitted. The next case for oral argument is Smith v. Baldwin. Thank you.
judges: Hug, Reinhardt, Bybee